UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY WALKER d/b/a GARY WALKER CUTTING HORSES; LEGAL CUT, LLC; TENNESSEE WALKER; KITCHEN/JOHNSON RANCH, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-1845-B |
| KEVIN KOELZER, VIKI R. BISHOP, and MIDWAY FARMS & FORAGE INCORPORATED, | § § § § | |
| Defendants. | § § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiffs Gary Walker d/b/a Gary Walker Cutting Horses, Legal Cut, LLC, Tennessee Walker, and Keith Kitchen and Nan Johnson d/b/a Kitchen/Johnson Ranch's (collectively, "Plaintiffs")'s Amended Motion for Default Judgment (Doc. 43). For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**, and the Court **DEFERS** ruling on damages until the Plaintiffs appear for an evidentiary hearing.

## I.

## BACKGROUND

*A.     Factual Background*

This is a products liability dispute involving the death and disability of several western performance horses. Defendant Midway Farms & Forage Incorporated ("Midway Farms") "manufactures, markets, packages, labels, and sells Select-Way Premium Alfalfa Cubes for livestock consumption." Doc. 25, Second Am. Compl., ¶ 12. "Midway Farms has been in the hay

and alfalfa cube business for over 45 years." *Id.* ¶ 13. Midway Farms markets its alfalfa cubes as "nutritionally acceptable for horses, dairy cows, sheep, chickens, and many other farm animals." *Id.* ¶ 12.

Beginning in late 2018, Plaintiffs Gary Walker Cutting Horses ("GWCH") and Kitchen/Johnson Ranch ("KJ Ranch") engaged Midway Farms as the sole provider of alfalfa cubes to serve as horse feed for their performance horses. *Id.* ¶ 14. Midway Farms represented that its alfalfa cubes were "equine-safe" and "consistent in nutrient content." *Id.* ¶¶ 14–15. However, the alfalfa cubes sold to GWCH and KJ Ranch allegedly contained dangerous quantities of the ingredient molybdenum, which can be lethal to horses. *Id.* ¶¶ 16–17. Plaintiffs allege that "[h]igh levels of lethal ingredients in the [a]lfalfa [c]ubes, including molybdenum, caused laryngeal paralysis and other respiratory problems." *Id.* at 1–2. After the first horse was diagnosed with Molybdenum poisoning, Plaintiffs allegedly notified Midway Farms that Plaintiffs found lethal substances in the alfalfa cube shipments. *Id.* ¶¶ 16, 18. Midway Farms nevertheless continued to manufacture alfalfa cubes allegedly contaminated with these "lethal substances." Doc. 25, Second Am. Compl., ¶ 18. Between the two ranches, six horses required veterinary care due to serious respiratory distress between March and May of 2019. *Id.* ¶¶ 19–29. By December 2019, four of those horses had been euthanized and two were substantially disabled. *Id.*

B.    *Procedural History*

On August 6, 2021, Plaintiffs sued the manufacturer and seller of the alfalfa cubes and its agents—Midway Farms & Forage Inc., Kevin Koelzer, and Viki R. Bishop (collectively, "Defendants")—for the sale of poisonous horse feed, which Plaintiffs allege caused the death and disability of their horses. *See* Doc. 1, Compl. On October 21, 2021, Defendant Viki Bishop was served with a summons and a copy of Plaintiffs' Original Complaint. *See* Doc. 6, Summons to Viki

R. Bishop. On January 24, 2022, Defendants Koelzer and Midway Farms were each served with a summons and a copy of Plaintiffs' Original Complaint. *See* Doc. 15, Summons to Kevin Koelzer; Doc. 16, Summons to Midway Farms.

On July 21, 2022, Plaintiffs filed a Second Amended Complaint. *See* Doc. 25, Second Am. Compl., ¶ 1. On July 28, 2022, Defendants Koelzer and Midway Farms were each served with summons and a copy of the Plaintiffs' Second Amended Complaint. *See* Doc. 29, Summons to Kevin Koelzer; Doc. 30, Summons to Midway Farms. On August 1, 2022, Defendant Viki Bishop was served with a Summons and a copy of the Plaintiffs' Second Amended Complaint. *See* Doc. 31, Summons to Viki R. Bishop. No Defendant appeared or filed a responsive pleading within the twenty-one-day period required by the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 12(a)(1)(A)(i). Plaintiffs subsequently filed their Amended Motion for Default Judgment on May 11, 2023. Doc. 43, Am. Mot. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the requirements for obtaining a default judgment. A plaintiff may only obtain a default judgment after securing an entry of default by the clerk of court. The entry of default occurs when the plaintiff demonstrates by affidavit or otherwise that the defendant is in default, which means the defendant "has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); FED. R. CIV. P. 55. However, an entry of default does not automatically entitle a plaintiff to judgment. A plaintiff must apply for judgment based on the defendant's default—this is the default judgment. *New York Life Ins. Co.*, 84 F.3d at 141.

District courts are afforded wide discretion in determining whether to enter a default judgment. That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (internal footnote omitted). Courts must carefully review the pleadings to ensure that a plaintiff is entitled to a default judgment. To that end, courts have developed a three-part analysis that assesses: "(1) whether the entry of default is procedurally warranted, (2) the substantive merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings for the judgment, and (3) what form of relief, if any, a plaintiff should receive." *Griffin v. O'Brien, Wexler, & Assocs.*, No. 4:22-CV-0970, 2023 WL 4303649, at *2 (E.D. Tex. June 30, 2023) (citation omitted).

### III.

### ANALYSIS

The Court finds that default judgment is appropriate for all of Plaintiffs' claims other than their fraud claim. First, default judgment is procedurally warranted because Defendants have not participated in this case. Second, Plaintiffs have shown a basis for judgment in the pleadings on their negligence, breach of express warranty, and breach of implied warranty of merchantability claims. However, Plaintiffs have failed to show a basis for judgment in the pleadings on their fraud claim. Third, the Court cannot calculate the Plaintiffs' requested damages with mathematical certainty.

A.    *An Entry of Default Judgment is Procedurally Warranted.*

The Court finds that default judgment is procedurally warranted. Courts apply six factors when determining whether default judgment is procedurally warranted:

-4-

[1] [W]hether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Here, all six factors as applied to this case suggest default judgment is procedurally warranted.

First, there are no material facts in dispute because Defendants have not filed any responsive pleadings. *See Lindsey*, 161 F.3d at 893; *see also Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff[s'] interests." *See Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default are clearly established because defendants have not filed any responsive pleadings or otherwise participated in this case. *See Lindsey*, 161 F.3d at 893 ("The clerk may enter a default judgment . . . where the defendant initially fails to appear."). Fourth, there is no evidence that indicates Defendants' silence is the result of a "good faith mistake or excusable neglect." *See id.* Fifth, a default judgment is not unfairly harsh because Defendants have failed to answer or otherwise respond since being served with the Second Amended Complaint over one year ago and failed to answer or otherwise respond to the Plaintiffs' initial complaint. *See United States v. Washington*, 2017 WL 3394730, at *1–2 (N.D. Tex. Aug. 8, 2017) (Boyle, J.) (entering default judgment against a defendant that failed to answer or otherwise respond to the plaintiff's complaint for two months). Sixth, the Court is not aware of any facts that would give rise to "good cause" to set aside the default. *See Lindsey*, 161 F.3d at 893. Therefore, Plaintiffs have established the procedural requirements for default judgment.

B.   *There is a Sufficient Basis for Judgment in the Pleadings For All Claims Except the Fraud Claim.*

In light of the entry of default, Defendants are deemed to have admitted the well-pleaded allegations in Plaintiffs' Second Amended Complaint. *See Nishimatsu*, 515 F.2d at 1206 (citations omitted). However, Defendants are "not held to admit facts that are not well-pleaded or to admit conclusions of law." *See id.* Thus, the Court must review the Second Amended Complaint to determine whether they are well-pleaded and provide a sufficient basis for judgment on each of Plaintiffs' claims for relief. *See id.* In conducting this analysis, the Court draws "meaning from the case law on Rule 8," requiring "a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting FED. R. CIV. P. 8(a)(2)). Here, Plaintiffs bring Texas law claims against Defendants for negligence, breach of an express warranty of goods, breach of the implied warranty of merchantability, and fraud. Doc. 25, Second Am. Compl., ¶¶ 30–60.

1.   <u>There is a Sufficient Basis in the Second Amended Complaint to Grant Plaintiffs' Claim for Negligence.</u>

Under Texas law, a plaintiff seeking to prove negligence must establish: "[1] a duty, [2] a breach of that duty, and [3] damages proximately caused by the breach." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (citation omitted). Manufacturers are required to "provide a product that is reasonably safe for its foreseeable use." *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 584 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.) (citation omitted). "In Texas, proximate cause has two factors: cause in fact and foreseeability." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997). "Cause in fact is 'but for cause,' meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *Id.* (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex. 1987)). "Foreseeability means that a

person of ordinary intelligence should have anticipated the dangers that his negligence created." *Id.*

After reviewing the Second Amended Complaint, the Court finds that Plaintiffs' pleadings are sufficient for the Court to grant default judgment on their negligence claim. First, Defendants, as manufacturers of alfalfa cubes, had a duty to provide products that were reasonably safe for their foreseeable use: consumption by horses. *See Morris*, 735 S.W.2d at 584; Doc. 25, Second Am. Compl. ¶ 12. Second, Plaintiffs pleaded that Defendants breached their duty by "failing to take measures in [their] manufacturing process to ensure the alfalfa cubes did not contain fatal levels of . . . [m]olybdenum." Doc. 25, Second Am. Compl., ¶ 34(a). Additionally, Defendants also allegedly breached their duty as manufacturers by providing alfalfa cubes that poisoned the Plaintiffs' horses and thus were not "reasonably safe for [their] foreseeable use." *See Morris*, 735 S.W.2d at 584.

Third, Plaintiffs pleaded that their damages—four horses dying and two being permanently disabled—were proximately caused by Defendants breaching their duties as manufacturers. *See id.* ¶¶ 35–36. As discussed above, Plaintiffs allege that Defendants failed to take measures to ensure the alfalfa cubes did not contain "fatal levels of any ingredients, including [m]olybdenum," *id.* ¶ 34(b), and that the alfalfa cubes contained "[m]olybdenum, in quantities lethal to horses." *Id.* ¶ 16. Plaintiffs asserted that their horses' medical issues were caused by these poisonous alfalfa cubes. *See id.* ¶ 36. Additionally, Plaintiffs allege that high levels of molybdenum can cause laryngeal paralysis and respiratory problems in horses. *Id.* at 1–2. Specifically, Plaintiffs allege that after eating the alfalfa cubes, three horses suffered laryngeal paralysis, *id.* ¶¶ 23–24, 28, and the other three horses suffered some form of respiratory distress. *Id.* ¶¶ 19, 21, 26. All six of the horses began suffering these symptoms between March and May 2019, after Plaintiffs received a new shipment

of the alfalfa cubes. *Id.* ¶¶ 19–29. Therefore, Plaintiffs established that Defendants' negligence "was a substantial factor in bringing about the injury." *See Gutierrez*, 106 F.3d at 687.

Plaintiffs also alleged that Defendants knew or should have known that their failure to ensure nutritional consistency in the alfalfa cubes would cause serious injury to horses. *See* Doc. 25, Second Am. Compl., ¶¶ 12, 35; *Gutierrez*, 106 F.3d at 687. Ultimately, the Court concludes that the Plaintiffs' injuries were foreseeable because a person of ordinary intelligence would anticipate the horses suffering harm from failing to take measures to ensure horse feed does not contain toxic substances. *See Gutierrez*, 106 F.3d at 687.

2. <u>There is a Sufficient Basis to Grant Plaintiffs' Breach of Express Warranty of Goods Claim.</u>

Under Texas law, a claim for breach of express warranty has the following elements:

(1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation of fact or promise became a part of the basis of the bargain; (3) that the plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmations of fact or promise; (5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of plaintiff's injury.

*Great Am. Prods. v. Permabond Int'l*, 94 S.W.3d 675, 681 (Tex. App.—Austin 2002, no pet.) (citation omitted).

The Court finds that Plaintiffs have sufficiently pleaded their claim for breach of express warranty of goods. First, Plaintiffs pled that Defendants made an express affirmation of fact that their alfalfa cubes were safe for horses because when "advertising, labeling, marketing, and promoting horse feed . . . Defendants represented that the feed was nutritious and safe for consumption by horses." *See* Doc. 25, Second Am. Compl., ¶ 44; *see Great Am. Prods*, 94 S.W.3d at 681 (citation omitted). Additionally, Plaintiffs satisfied the basis of the bargain and reliance elements by adequately pleading that they relied upon this express warranty when they purchased

the alfalfa cubes and fed them to their horses. *See* Doc. 25, Second Am. Compl., ¶ 45; *see Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997) ("'Basis of the bargain' loosely reflects the common-law express-warranty requirement of reliance.") (internal footnote omitted) (citations omitted); *see also General Supply & Equipment Co. v. Phillips*, 490 S.W.2d 913, 918 (Tex. Civ. App.—Tyler 1972, writ ref'd n.r.e.) (listing the basis of the bargain and reliance elements separately but considering them together).

Fourth, Plaintiffs adequately pleaded that the alfalfa cubes fed to their horses did not conform to Defendants' representations because they contained dangerous levels of molybdenum as demonstrated by the Plaintiffs' horses falling ill. *See* Doc. 25, Second Am. Compl., ¶ 47; *see Great Am. Prods*, 94 S.W.3d at 681 (citation omitted). Finally, as discussed above in the negligence section, Plaintiffs have sufficiently pleaded the fifth and sixth elements of the breach of express warranty claim by asserting that the contaminated feed caused their horses to die or suffer severe health consequences. *See* Doc. 25, Second Am. Compl., ¶¶ 47–50; *see Great Am. Prods*, 94 S.W.3d at 681 (citation omitted). Therefore, there is a sufficient basis in the pleadings to grant default judgment as to Plaintiffs' claim for breach of an express warranty.

3. <u>There is a Sufficient Basis to Grant the Breach of the Implied Warranty of Merchantability Claim.</u>

The implied warranty of merchantability only applies when "the seller is a merchant with respect to goods of that kind." TEX. BUS. & COM. CODE ANN. § 2.314(a). A seller is a merchant if he "deals in goods of the kind or . . . holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." *Id.* § 2.104(a). "The elements of a cause of action for breach of the implied warranty of merchantability are as follows: 1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the

defendant of the breach; and 4) the plaintiff suffered injury." *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.) (citing TEX. BUS. & COM. CODE ANN. §§ 2.314, 2.314 cmt.13, 2.607(c)(1), 2.714, 2.715). Merchantable goods "must be . . . fit for the ordinary purposes for which such goods are used." TEX. BUS. & COM. CODE ANN. § 2.314(b)(3).

The Court finds that Plaintiffs have sufficiently pleaded their claim for breach of the implied warranty of merchantability. As a threshold matter, Plaintiffs have established the Defendants are merchants with regards to the alfalfa cubes. Plaintiffs alleged "Defendants were in the business of selling [a]lfalfa [c]ubes . . . and held themselves out as having special knowledge regarding . . . such feed." Doc. 25, Second Am. Compl., ¶ 54; *see* TEX. BUS. & COM. CODE ANN. § 2.104(a). Further, Plaintiffs alleged that "Midway Farms has been in the hay and alfalfa cube business for over 45 years." Doc. 25, Second Am. Compl., ¶ 13. Therefore, the Defendants are merchants with regards to alfalfa cubes. *See* TEX. BUS. & COM. CODE ANN. § 2.314(a).

Plaintiffs have also pled sufficient facts to establish all four elements of their breach of the implied warranty of merchantability claim. First, Plaintiffs pleaded that the Defendants sold the alfalfa cubes to Plaintiffs. *See* Doc. 25, Second Am. Compl., ¶ 53. Second, Plaintiffs sufficiently pleaded that the alfalfa cubes were unmerchantable because the cubes contained lethal ingredients, making them unfit for their ordinary purpose of feeding horses. *See id.* ¶¶ 16, 57. Third, Plaintiffs notified Midway Farms of the lethal levels of molybdenum in the alfalfa cubes after the first horse was diagnosed with molybdenum poisoning. *See id.* ¶¶ 18, 58. Fourth, Plaintiffs adequately pleaded injury by asserting that their horses suffered severe disability as a result of ingesting the alfalfa cubes. *See id.* ¶¶ 19–29, 59. Accordingly, there is a sufficient basis in the pleadings for the breach of the implied warranty of merchantability claim.

4.  <u>There is Not a Sufficient Basis in the Pleadings to Grant Plaintiffs' Claim for Fraud.</u>

Plaintiffs asserting state law fraud claims in federal court must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). Under Rule 9(b), plaintiffs are required to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, Rule 9(b) requires plaintiffs to plead the "specif[ic] . . . statements contended to be fraudulent, identifying the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quotations omitted). Plaintiffs seeking default judgment on a fraud claim are likewise required to satisfy this heightened pleading standard. *See, e.g., Edge Adhesives, Inc. v. Sharpe Concepts, LLC*, No. 4:15-CV-0405-O, 2015 WL 12743618, at *3 (N.D. Tex. Aug. 31, 2015) (O'Connor, J.).

The Court concludes that Plaintiffs have failed to sufficiently plead their fraud claim with the specificity required under Rule 9(b)'s heightened pleading standard. Plaintiffs allege that Defendants specifically made the fraudulent statements that the alfalfa cubes were safe for horses in their marketing materials. Doc. 25, Second Am. Compl., ¶¶ 14–16. Plaintiffs also plead they contracted with Defendants in late 2018 because of the Defendants' marketing representations. *See* Doc. 25, Second Am. Compl., ¶¶ 14–16. However, Plaintiffs do not state when or where these allegedly fraudulent representations were made, nor do they identify the speaker. *See Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 207 (quotations omitted). Therefore, the Court finds that Plaintiffs failed to meet the heightened pleading standard of Rule 9(b) and that there is not a sufficient basis in the pleadings to award default judgment on Plaintiffs' fraud claim.

C.       *The Court Is Unable to Calculate Damages with Certainty.*

"After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, a hearing is unnecessary if the damages can be determined with mathematical calculation by referencing the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993).

In this case, "Plaintiffs request a monetary judgment of $652,346.45." Doc. 43, Am. Mot., 12. This estimated monetary judgment includes $592,599.44 in damages, plus $59,747.01 in prejudgment interest. *Id.* Plaintiffs calculate these damages based on Plaintiffs' own valuations of the deceased and injured horses and Plaintiffs' own estimates for future costs. *Id.* at 13–17. Plaintiffs also include veterinary expenses and out-of-pocket costs for the unused alfalfa cubes. *Id.* at 16–17. While the veterinary expenses and cost of the unused cubes may be calculable, the market value of the deceased and injured horses and future costs cannot be calculated with certainty by reference to the pleadings and supporting documents. *See James*, 6 F.3d at 311. Accordingly, the Court defers ruling on the Plaintiffs' request for damages until the court holds an evidentiary hearing.

## IV.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Plaintiffs' Amended Motion for Default Judgment (Doc. 43) as to all claims and **DEFERS** ruling on Plaintiffs' request for $652,346.45 in monetary judgment. The Court sets an evidentiary hearing for:

**Wednesday, February 21, 2024, at 10:00 am.**
Before The Honorable Jane J. Boyle
Courtroom 1516, Fifteenth Floor
United States Courthouse
1100 Commerce Street
Dallas, Texas 75242

Plaintiffs and their counsel are **ORDERED** to attend and may present testimony and documentary evidence supporting Plaintiffs' request for damages.

SO ORDERED.

SIGNED: February 5, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE